## APPEAL OF RICHARD WISTAR ET AL.

[Estate of Richard Wistar, Deceased.]

### FROM THE DECREE OF THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued April 3, 1889—Decided April 15, 1889.

[To be reported.]

1. Where land is sold by a trustee appointed by the Orphans' Court in partition proceedings, and the proceeds are paid into court in compliance with the terms of the order, the court, though a separate Orphans' Court, may adjudicate the trustee's account and make distribution without the intervention of an auditor.

2. Even though the full proceeds of sale, amounting to $203,450, have been paid into court, and the trustee gave no bond, the sale made being most advantageous and largely the result of the trustee's personal efforts, an allowance of one per centum upon the amount as compensation for his services is not excessive.

3. A co-tenant, who for many years was in the exclusive possession of the real estate sold, holding adversely to the title of his co-owners, is without equity to prove against the fund claims for taxes and municipal assessments against the land, paid by him during his exclusive enjoyment.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 192 January Term 1889. Sup. Ct.; court below, No. 271 January Term 1886, O. C.

On October 9, 1888, the account of Samuel W. Reeves, trustee appointed by the Orphans' Court to make sale of the real estate of Richard Wistar, deceased, was called for audit. The fund for distribution arose from the sale of seven properties and amounted to $204,195.55, of which sum $745.55 was in the hands of the trustee, being a portion of the cash payment at the time of the sales, the balance, $203,450, having been paid into court in compliance with the terms of the order of sale.

At the hearing before the auditing judge, ASHMAN, J., it was made to appear:

By the will of Richard Wistar, admitted to probate on June

25, 1821, there was devised to his two daughters, Catharine and Sarah, his lot of land called Prospect Hill, containing about six acres and a half, to hold for their natural lives and the life of the survivor of them, and at the decease of the survivor the property was devised to the male issue then living of the testator's son Richard. Catharine Wistar died in 1822. Sarah Wistar died on September 21, 1886, in possession.

On the death of Sarah Wistar, Richard and William Lewis Wistar, sons of Richard Wistar, the testator's son, entered upon the devised real estate and, as found by the auditing judge, "held exclusive possession thereof for a number of years under the claim that they were the sole living male issue, and therefore the only parties entitled." In an action of ejectment in the form of a case stated, instituted in 1883, see Wistar v. Scott, 105 Pa. 200, the shares of Richard and William L. Wistar were determined to be two sixths only of the said real estate, and the remaining four sixths were awarded to grandsons of the testator's son Richard, the children of Richard's two daughters. On May 6, 1867, W. L. Elkins and P. A. B. Widener acquired by conveyance the undivided three sixths of the real estate, and thereafter the proceedings in partition were had, resulting in the sale of the land producing the fund for distribution.

Objection was made on behalf of Richard and William L. Wistar that the auditing judge should not adjudicate the account, but that an auditor should be appointed to hear claims and make distribution. The objection was overruled.

The auditing judge awarded to the accountant one per centum upon the amount of the proceeds of sale, as commissions.

On behalf of Richard and William L. Wistar, an offer was made to prove that the taxes on the properties from 1866 to 1883, inclusive, amounting to $34,908.88, had been paid by them alone; that municipal claims for street improvements, liens for the removal of nuisances, etc., amounting to $55,000 had also been paid by them alone; claiming that those taxes, claims, etc., with interest, or such proportion thereof as they would be entitled to receive from their co-tenants, should be allowed to them. The auditing judge, considering Ford v. Knapp (N. Y.), 3 Cent. R. 411; Scott v. Guernsey, 48 N. Y. 123; Crest v. Jack, 3 W. 238; Gregg v. Patterson, 9 W. & S.

197, and Foster v. Weaver, 118 Pa. 42, refused to admit proof of the claims thus presented.

The adjudication having been filed, Richard and William L. Wistar excepted thereto, alleging that the auditing judge erred, inter alia:

1. In allowing the trustee a commission of one per cent.[1]

6. In ruling out their offer to prove that the taxes on the property from 1866 to 1883, inclusive, were wholly paid by Richard and William Lewis Wistar, amounting to $34,908.88, principal with the interest, with the view to charge against the other four sixths the proper share of these taxes with interest; also that the Messrs. Wistar had paid for municipal claims against the land in question $55,000, with the view to charge four sixths thereof against their co-tenants' share.[3]

9. In making distribution of the fund in court.[5]

12. In finding that Richard and William L. Wistar held the land adversely from 1866 to 1883.[6]

Said exceptions being argued before the court in banc, the court, PENROSE, J., on December 1, 1888, delivered the following opinion:

The act of 29th March, 1832, § 49, P. L. 206, with reference to the ascertainment of liens affecting the shares of parties in partition, so far as it provides for the appointment of an auditor, appears to be permissive only, and not mandatory. It is, at least, intended for the protection of lien creditors and of the executor, administrator, or trustee, making the sale, whose duty it is, under the act of 17th April, 1863, P. L. 341, to "file an account of such trusteeship," and, impliedly, to see that the money is properly distributed: Lucas's App., 53 Pa. 404; Reed v. Fidelity etc. Co., 113 Pa. 574. The accountant does not complain of the action of the auditing judge in making distribution without the intervention of an auditor, and it appears from the searches that there were no liens except such as, at the request of the creditor, have been duly passed upon: Quilibet potest renunciare juri pro se introducto. Very clearly, objection cannot be made by any of the heirs, since it is to their advantage that the distribution should be made promptly and without expense.

Nor is there more merit in the objection to the distribution by the auditing judge of so much of the fund as had been paid into court. Granted that the constitutional provision, giving rise to the court as now constituted and requiring accounts to be audited by the judge, unless all the parties request a reference, does not in terms apply where the fund with which the trustee making the sale would otherwise be chargeable, has been paid into court in accordance with the provisions of the act of 27th March, 1865, P. L. 45; there is nothing in the letter, and still less in the spirit of the constitution or of any act of assembly, which forbids the distribution without the appointment of an auditor. The act just referred to provides that in proceedings in partition in the Orphans' Court, "the moneys arising from such sales shall be paid into court and distributed according to law;" but a later act, 28th April, 1868, P. L. 105, provides that so much of the act approved 27th March, 1865, "as requires the money arising from such sales to be paid into court, be and the same is hereby modified, so that the court may, in its discretion, require such payment or make such order as may be just in the premises." Under the act of 19th May, 1874, § 3, P. L. 206, either of the judges may hold the court, and, of course, make any order permitted by the acts of assembly. Where, as in the present case, all questions affecting the disposition of the entire fund have been determined in the settlement of an account embracing part of it, the Orphans' Court would have small claim to be considered a court of equity if, with the balance not only in its grasp but under its exclusive control, it should refuse to finish the distribution, until, after protracted delay and the depletion of the fund, the questions already passed upon had come before it a second time on exceptions to the report of an auditor. Even in the days of Lord Coke it was said to be "an excellent and profitable law, concurring with the wisdom and judgment of ancient and latter times," which disallows "curious and nice exceptions tending to the overthrow or delay of justice : apices juris non sunt jura." The modern authorities speak with still more emphasis: Hutchison v. Commonwealth, 82 Pa. 483; Allen v. Liggett, 81 Pa. 487; McLaughlin v. McLaughlin, 85 Pa. 317, etc. The law's delays have been a fruitful source of complaint; and the spectacle of a suitor deliberately seeking

to set in motion that car of Juggernaut, a proceeding before an auditor, is somewhat extraordinary. It is our duty to prevent self-sacrifice in such a case, especially where it involves the destruction of other parties asking protection.

Whether, after compelling their co-tenants to resort to ejectment, the exceptants can now assert that their previous holding was not adverse; and whether, assuming it to have been adverse, they are for that reason, as they certainly would have been had the holding been tortious : Foster v. Weaver, 118 Pa. 42, precluded from asking reimbursement for taxes and other expenses paid by them for the preservation of the property subsequently declared to be a tenancy in common, are questions which do not necessarily arise at this time. Since the moneys so paid were not to prevent sales under liens, the payments never became a charge on the property; and, even had there been liens originally, they would have ceased by reason of not having been duly revived before the sale in partition. As an unsecured debt, it is barred by the statute of limitations, except as to the comparatively small part accruing within six years. Moreover, the debt is not one running with the land; it is personal, purely, and demandable, if at all, against those who were co-owners when the payments were made, some of whom had parted with their ownership before the sale which gave rise to the fund. The vendees, of course, cannot be made responsible, nor can their shares be diminished by such a claim.

There is a still further difficulty. The amount alleged to be due the exceptants for payments so made, still assuming their right to assert that they paid it as co-tenants, can only be ascertained as the result of an account debiting them with whatever they may have received from the common property, and such account is not within the jurisdiction of the Orphans' Court. The authority to distribute a fund in partition is altogether statutory, and the principle under which a court of general equity powers, when once possessed of a cause, will make an end of all controversy, cannot apply : Ake's App., 74 Pa. 116 ; Landis' Estate, 2 Phila. 217.

*      *      *      *          *      *      *

We cannot say that the allowance to the accountant as compensation for his services was excessive. The sale which he succeeded in effecting was a most advantageous one, and this,

it would seem, was largely the result of his personal efforts. It is true the money, except to the extent of the sums paid to the auctioneer, was paid, in accordance with the act of 1865, into court, and the element of responsibility, usually compensated by an allowance of two and a half per cent, was therefore wanting; but such payment does not lessen the value of the services actually rendered, nor make it improper, in estimating this, to consider the amount realized, though not for the purpose of allowing a commission: Twaddell's App., 81* Pa. 221. It is strongly persuasive of the propriety of the allowance, that no complaint whatever is made of it by four sixths of the owners.

＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊

The exceptions having been dismissed, the exceptants took this appeal, specifying for error:

1–6. The dismissal of their exceptions.[1 to 6]

*Mr. William Gorman* and *Mr. F. Carroll Brewster*, for the appellants:

1. Commissions are given as a compensation for labor and responsibility, and when neither the one has been performed nor the other incurred, there is nothing to be compensated: McCauseland's App., 38 Pa. 470; Pusey v. Clemson, 9 S. & R. 204. The trustee never handled the money, and was relieved of all responsibility in relation to it. He therefore cannot be likened to an ordinary trustee or executor, but rather to an auditor or master, whose compensation should be fixed, not by way of a commission upon a fund with which he has had nothing to do, but measured by his services, and a fee awarded him compensatory for the services performed: Montgomery's App., 86 Pa. 230.

2. There was not one particle of testimony to support the conclusion that the exceptants had held the land adversely. Adverse possession is not to be made out by inference, but by clear and positive proof; and every presumption is in favor of possession in subordination to the title of the true owner: Rung v. Shoneberger, 2 W. 23. The law is well settled that the possession of one joint tenant or tenant in common, is prima facie the possession of his co-tenant, also; and it must necessarily follow, that the possession of the one can never be considered as adverse to the title of the others.

Arguments.

3. The common law provided no means by which one tenant in common could compel his co-tenant who continued in possession of the common property and took more than his share of the rents and profits, to account, unless the rents and profits were received by one as the bailiff of the other: Henderson v. Eason, 17 Ad. & E. N. S. 701, 718 (79 E. C. L. R.). The statute of 4th and 5th Anne, c. 16, § 27, was passed to remedy this, and provided that actions of account might be brought and maintained. Under this statute, however, in force in Pennsylvania, a tenant in common is liable only for such rents as he shall actually receive from third persons: Kline v. Jacobs, 68 Pa. 57.

4. The liability to contribute is the result of a general equity founded on equality of burdens: Davidson v. Thompson, 22 N. J. Eq. 83; Dick's App., 57 Pa. 472; Freeman on Co-Tenants, § 322. " Courts of equity have always recognized the rule that a co-tenant asking their aid against an owner who has made improvements on the property, is entitled to relief only upon the condition that any equities thereby arising shall be taken into account; and, that in such case, where actual partition is made, and it is possible so to do, the improving tenant will be awarded the portion of the land upon which the improvements have been made:" Ford v. Knapp, 3 Cent. R. 411.

*Mr. J. Howard Gendell* and *Mr. J. B. Townsend* (with them *Mr. John M. Scott*), for the appellees :

1. As stated by the court below, " It is strongly persuasive of the propriety of the allowance that no complaint whatever is made of it by four-sixths of the owners." The two who do complain are those who have complained of every step taken. " The sale which he (the trustee) succeeded in effecting was a most advantageous one, and this it would seem, was largely the result of personal efforts." The objection to the allowance is not made with good grace by those who desired the appointment of an auditor, at an expense probably far exceeding these commissions, to say nothing of the delay involved.

2. The record of the ejectment was in evidence and this alone conclusively established the nature of exceptants' holding. They sold part of the lots as sole owners, and this appeared both in the ejectment record and also in the pleadings in this

partition. They collected a large sum for land-damages for opening streets, as appeared from the ejectment case and also from the city warrants in their favor produced and exhibited on the hearing. Thus enjoying and using the land, they now seek to compel payment of the bulk of their expenses. These expenses were paid under the claim that they were sole owners: therefore, they were sole debtors. Having enjoyed the profits they must bear the burdens: Qui sentit commodum, debet sentire et onus.

3. But conceding that the exceptants had a claim against their co-tenants for the payments made in their relief, where is their lien? What right have they to repayment from the moneys of Elkins and Widener, who purchased half the land in 1867, and to whom half the fund is awarded? These vendees cannot, of course, be made responsible, nor can their shares be diminished by such a claim: Huston v. Springer, 2 R. 97. Moreover, equity does not favor stale claims. But one payment, that of 1883, was made within six years before the audit, when the claim was first advanced. The others are all barred by the statute of limitations.

OPINION, MR. JUSTICE STERRETT:

Little, if anything, can be profitably added to what has been so well said by the learned judge of the Orphans' Court in support of its decree.

In view of all the circumstances, the allowance to the trustee for his services in conducting the sale, etc., measured as it was by one per centum of the amount realized, cannot be regarded as unreasonable. It is conceded on all hands that the services were efficient and valuable. If the trustee had been required to furnish security, the ordinary allowance would have been at least twice as much, and thus the expenses of sale would have been increased. The fact that the parties interested in the fund to the extent of two thirds are not dissatisfied with the allowance, is strongly persuasive of its reasonableness.

The offer to interject claims for contribution for taxes paid by two of the six tenants in common, during a period extending back to 1866, and for other claims against the land alleged to have been paid by them, was properly rejected. Ordinarily

the only claims that, of right, can be made upon a fund raised by the sale of land, under proceedings in partition, are the expenses, including costs, and liens on the land at the time it is sold.   The latter by reason of the conversion of the land into money retain their grasp on the fund, and must, of course, be paid out of it.   The former are charges on the fund in the nature of a lien for cost of producing it, and are always deducted before distribution.   But claims for contribution, such as were presented in this case, if allowable at all, must rest on an equitable basis.

In this case the appellants had no equity which, under the circumstances disclosed by the record, the court was bound to recognize.   For many years they were in exclusive possession and enjoyment of the land, all the while ignoring the title of their co-owners and excluding them from any participation in its management or control.   During that time, they paid in their own right and for their own benefit, as they supposed, the sums of money for which they now claim contribution from the appellees, who represent two thirds of the fund realized from the sale in partition.   It also appears that the owners of an undivided moiety of the land, in May, 1887, sold their interest to Messrs. Elkins and Widener.   They, as vendees of that interest, now rightly claim one half the net proceeds sale, less costs.   Upon what principle, legal or equitable, can they be called upon to contribute to claims, none of which were liens on the land when they purchased, and of which it does not even appear that they had any notice?

The remaining specifications are also without merit.   There is nothing in either of them that calls for a reversal or modification of the decree.

> Decree affirmed, and appeal dismissed at the costs of appellants.