Brandmier et al., Appellants, *v.* Stevens, Executrix et al.

Argued March 3, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, BALDRIGE and GRAFF, JJ.

*Charles F. Wharen,* for appellant, cited: Kinnear v. Scenic Rwys. Co., 223 Pa. 390; Ege v. Kille, 84 Pa. 333; 1 Tiffany, Real Property 91; Forsyth v. Wells, 41 Pa. 291; McIntosh v. Ropp, 233 Pa. 497; Matthews v. Rush, 262 Pa. 524.

*William J. Fitzgerald,* óf *Kelly, Balentine, Fitzgerald & Kelly,* for appellees, cited: Fulmer's App., 128 Pa. 24, No. 1 and 2; Blewett v. Coleman, 40 Pa. 45.

*N. H. Cowdrey* and with him *Knapp, O'Malley, Hill. & Harris,* for *Mary A. Mills,* cited: New York & Penna. Co. v. New York Central Railroad, 267 Pa. 64.

OPINION BY GAWTHROP, J., April 18, 1930:

This is an amicable action, instituted in 1923 by Fred Brandmier, to recover damages alleged to have been sustained by him as the result of the breach by the defendant, James McAnulty, trading as East Point Coal Company, of the stipulations and covenants of a coal lease. The East Point Coal Company operated an anthracite colliery on three tracts of land in Luzerne County. The three separate leases under which it operated were made to McAnulty by the owners of the land, who subsequently consented to assignments made by him to the company after its incorporation. One of the tracts was leased from the Hemsath heirs. The other two tracts, one consisting of forty acres and the other of sixty acres, were leased from plaintiff and his sister, Mary A. Mills. Brandmier owned an undivided one-fourth interest in the forty acre tract and an undivided one-half interest in the sixty acre tract, and Mary A. Mills owned the other undivided interest in both tracts. Under the Mills lease the lessee got not only the coal in the ground but also the culm on the ground, on a royalty basis of thirty cents a ton. Under the Brandmier lease he got the coal in the ground at the same royalty, but the lessor's interest in the culm bank on the ground was reserved. Brandmier also granted to McAnulty under two separate agreements the right to use the materials of an old washery that was on the ground and the machinery and equipment and other property that was there. April 24, 1919, Brandmier and wife, by warranty deed, granted and

conveyed to Mary A. Mills all his right, title and interest in and to the sixty acre tract (excepting two small pieces not here involved) and "the grantor's interest in the coal and other minerals." Mary A. Mills, by writing not dated but subsequent to the deed of April 24, 1919, granted to plaintiff all her right, title and interest in the culm banks on the tract owned in common by both subject, however, to the rights of the defendant, McAnulty, in the lease from her. In his statement of claim Brandmier made seventeen separate claims, the aggregate of which amounted to $249,819.-26. At the trial before the court without a jury he withdrew a number of claims so that the items in dispute were reduced to six. Prior to the trial plaintiff and Mrs. Mills filed a petition in the court below, setting forth that Mrs. Mills threatened to bring suit against defendant for certain of the items set forth in plaintiff's claim, and praying that the trial judge award an interpleader issue between plaintiff and Mrs. Mills and decide in the present action the respective rights of plaintiff and Mrs. Mills as to the items mentioned in the petition. The prayer was granted and, after trial, the court filed an opinion containing findings of fact and the following conclusions of law: (1) That defendant is indebted to the legal representatives of Mary A. Mills in the sum of $1,375.22 for haulage royalty, and $858.44 insurance on the washery, or a total amount of $2,233.66, with interest from date of suit, June 1, 1923; (2) that defendant is indebted to the legal representatives of Fred Brandmier, deceased, in the sum of $1,458.30, with interest from June 1, 1923, for 4861 tons of coal removed from a dump on a royalty basis of thirty cents a ton. The exceptions filed in plaintiff's behalf urged: (1) That the award of the item for insurance on the washery should have been to him; (2) that he was entitled to an allowance for machinery used and appropriated by defendant; and (3) that the court below

used the wrong measure of damages as to the claim for the coal removed from the dump. The exceptions were dismissed by the court en banc and this appeal was taken.

The first contention of appellant is that the proceeds of the insurance on the washery should have been awarded to him. The breaker and washery located on the sixty acre tract and insured by defendant were destroyed by fire May 24, 1922. October 12, 1914, plaintiff leased to one Flynn all his right, title, interest and estate in all the coal in, under and upon the sixty acre tract (excepting the culm dump thereon) for mining purposes, with the right to use the washery. January 8, 1915, he gave written consent to the assignment of the lease by Flynn to McAnulty and others, and McAnulty subsequently became the sole owner of the lease. As previously stated, on April 24, 1919, appellant and his wife conveyed all his right, title and interest in that tract, excepting and reserving the coal and other minerals, to Mary A. Mills. It is elementary law that a deed or grant must be construed most strongly against the grantor and that it conveys improvements on the land unless reserved to the grantor: Sheffield W. Co. v. Elk T. Co., 225 Pa. 614; Klaer v. Ridgway, 86 Pa. 529. Appellant's contention that the washery was a trade fixture cannot be sustained. We can do no better than adopt the following excerpts from the opinion of the court below in deciding that Mrs. Mills is entitled to the insurance: "The deed clothed Mrs. Mills with the title to the surface, together with the buildings and culm dump thereon. If the plaintiff intended to reserve the washery he could have said so; under no sensible or rational construction of the English language can the term 'washery' be embraced within the coal reservation and the subsequent conduct of the plaintiff in taking from Mrs. Mills a grant of the culm banks is contradictory of such a construction. Did the subsequent conveyance of

the culm banks by Mrs. Mills carry with it a grant of the washery as contended by plaintiff? If it did then it also carried with it the title to the breaker built around the washery, as to which plaintiff makes no claim ....... In the fullest possible form every interest in this property was transferred, except as defined in the exception, and all the words of the deed must be taken most strongly against him 'that doth speak them and most to the advantage of the other party.' We believe the intent of the parties is clearly expressed and nothing was reserved in the deed from plaintiff to Mrs. Mills other than the coal and the only grant to plaintiff subsequently was the culm banks.''

The next complaint is of the failure to allow a recovery for certain articles of machinery and mining implements alleged to have been taken and appropriated by defendant. A careful reading of the evidence pertaining to this claim convinces us that the statement of the trial judge that there was no proof that defendant took these articles, that the machinery was destroyed by the fire which consumed the washery and breaker, and that there is no legal testimony upon which to base the fair market value of the articles, is fully justified. Further comment would be superfluous.

The next question is, what was the measure of damages applicable to plaintiff's undivided one-half interest in the coal reclaimed by defendant from the culm dump on the sixty acre tract? Appellant contends that the removal of the coal from the bank was an unlawful and tortious taking; and that defendant should be required to account to him for the value thereof at the price for which it was sold, $7.09 per ton, less an allowance of twenty-five cents a ton for loading and preparing the coal for market, and not be allowed to profit from his own wrong. He relies upon Foster v. Weaver, 118 Pa. 42, in which it was held that a tenant in common in an oil lease who had been tortiously deprived by the fraud of his co-tenant of his in-

terest in an oil lease hold, was entitled, in a suit brought for his share of oil produced and converted by the co-tenant while in possession, to recover as damages the value of the oil in the tank, without deduction for the expenses of production; and that the defendant could not recoup from the value of the mineral as a chattel the expense of mining and producing it. That case, however, may be readily distinguished from the present on the ground that the conversion resulted from the defendant's engaging in a fraudulent conspiracy to cheat the plaintiff, a clearly tortious act.

The Act of April 25, 1850, P. L. 573, which subjects tenants in common in possession of minerals to an accountability to their co-tenants for minerals taken out, provides only that the sum which "may be justly and equitably due" shall be ascertained and paid. In Coleman's Appeal, 62 Pa. 252, and in Fulmer's Appeal, 128 Pa. 24, it was held that a co-tenant in possession in working a quarry is not a trespasser; that he may lawfully remain in possession and take minerals, or other valuable products for his own advantage; and that his ownership is such that he cannot take his own share without also at the same time and by the same act taking the share of his co-tenant. Under similar reasoning a joint owner in possession of minerals which have been mined and have become personalty is not guilty of a tortious conversion if he sell the same as his exclusive property, but he must account to his co-tenant merely for what is justly and equitably due him for his interest in the minerals.

The question then is, how the value of that interest shall be ascertained. The coal in the culm bank was personal property. The general rule, applicable as the measure of damages where the object is to secure compensation only, for personalty taken, is to allow the market value, that is, what the owner could have realized for the property in the market less the cost of marketing it. That was the rule applied to coal taken

from a culm bank in Lehigh Coal Co. v. Wilkes-Barre & Eastern R. R. Co., 187 Pa. 145. Plaintiff's witnesses testified that the cost of loading material from the bank into a car for transportation to the breaker and washery would be twenty-five cents a ton, and he claims that the price received by defendant for the coal, $7.09 per ton, less twenty-five cents a ton for said loading, was the market value per ton of the coal taken. We think that the learned trial judge adequately demonstrated the impropriety of measuring the damages in this manner when he said: "This basis of value by plaintiff ignores and eliminates the cost of transporting the coal from the dump, the labor for putting it through the washery, the cost of the operation or investment, the wear and tear of the machinery and all expenses incident thereto, such as insurance, workmen's compensation and mixing it (the coal) with fresh mined coal to make it marketable, all of which, according to the foreman of defendant and not denied by plaintiff, cost from four to five dollars a ton." Plaintiff produced no evidence of the value of the coal as it lay in the culm bank mixed with slate and other refuse. On the other hand defendant's witnesses, who were experienced in reclaiming culm banks, testified that the culm dump had no market value whatever, because the tonnage of coal was so small that it could not be operated profitably by anybody other than the person having a plant on the ground, but that to defendant whose plant was accessible to the dump it would be worth from twenty-five to thirty-five cents a ton, that that was the "fair leasing value of that character of dump at that time," and that it had no other market value. Plaintiff did not undertake to meet this testimony. The court found that the market value of the coal was thirty cents per ton. Under the evidence and in the light of the peculiar circumstances of the case, no other legitimate measure of damages could have been adopted. In adopting it defendant was

required to pay for reclaimed coal the same royalty which he paid for fresh mined coal, and plaintiff was awarded $1,458.30, with interest, for coal reclaimed from a dump that cost him $150. We are of one mind that plaintiff has no just cause for complaint as to this portion of his claim.

The only remaining contention is in respect to defendant's liability for damages resulting from the covering of a coal bank with refuse, so that it could not be reclaimed. As this question was not raised by any exception to the findings and conclusions of the trial judge and was not argued before the court en banc, we might disregard it on that ground. We have examined it, however, and find that it is so lacking in merit that discussion is unnecessary.

The judgment is affirmed.