908

BLUM et al. v. WILLIAM GOLDMAN
THEATRES, Inc. (two cases).

Nos. 9755, 9762.

United States Court of Appeals
Third Circuit.

Argued Nov. 5, 1948.

Decided May 3, 1949.

Joseph S. Clark, Jr., Philadelphia, Pa. (Barnes, Dechert, Price, Smith & Clark, on the brief), for William Goldman Theatres.

David H. H. Felix, Philadelphia, Pa. (Felix & Felix, Philadelphia, Pa., on the brief), for Frank Blum et al.

Before BIGGS, Chief Judge, and McLAUGHLIN and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

The two appeals at bar are an outgrowth of a prior litigation between the same parties which terminated in a judgment of the court below [1] affirmed by this court.[2]

[1] See D.C., 69 F.Supp. 468

[2] See 3 Cir., 164 F.2d 192.

with a modification not herein pertinent.[3] The judgment referred to directed the defendant, hereinafter designated "Goldman," to convey [4] to the plaintiffs Frank and Sara J. Blum, hereinafter referred to as "Blum," certain tracts of land in Upper Darby, Pennsylvania, known as the 69th Street Theatre property, consisting of a theatre, a number of stores, and approximately 40 apartments. It further directed Goldman to "* * * forthwith account for and pay over unto the plaintiff all the surplus of gains, rents, issues and profits derived by it from its holding of the same premises over and above its proper charges connected therewith, together with interest at the legal rate thereon."

Pursuant to the decree, Goldman conveyed the property to Blum and filed a "Statement of Cash Receipts and Disbursements" [5] for the year ending December 30, 1946 and sent Blum a check for $3,625.01, representing the excess of the cash receipts over disbursements. Blum, dissatisfied with the accounting and in particular with certain of the items of disbursement, moved the court below for a determination of the amount of money due him pursuant to the decree. His motion contested the "accuracy and correctness of the defendant's account" and enumerated many items in which he alleged various sums were due him. An extensive stipulation was entered into by the parties, containing "all of the relevant facts necessary for a decision" of the legal questions involved, in which many of the differences [6] were reconciled, Blum and Goldman agreeing that the court could proceed on the basis of the stipulation as if the facts contained therein had been found by a duly appointed master.

The suit at No. 9755 is an appeal by Goldman from an order of the court below disallowing him credit for the item listed as "Home office expense" (Item 15 in the account rendered. See note 5, supra) amounting to $7,397.29. Goldman contends that this amount represents a reasonable proportion of his general overhead that is properly attributable to the 69th Street property that was conveyed to Blum.

The suit at No. 9762 is a cross appeal by Blum from the same judgment. In particular he claims that he is entitled to be recompensed for alleged excessive salaries and excessive interest paid on the mortgage, and also to receive interest on several items. It is Blum's theory that since Goldman has been found to have wrongfully obtained possession of real estate belonging to Blum, and a restitution and accounting having been ordered, he, Blum, is entitled to

---

[3] See the opinion of this court in Blum v. William Goldman Theatres, Inc., 3 Cir., 174 F.2d 914, filed concurrently with this opinion.

[4] The circumstances leading to this part of the judgment need not be related here.

[5] 69th Street Theatre Building and Killegary Apartments Statement of Cash Receipts and Disbursements Year Ended December 30, 1946

| | | |
|---|---|---|
| Receipts: | | |
| 1 Rents received | | $75,773.84 |
| Disbursements: | | |
| 2 Salaries (Bldg. Supt., Janitor, Firemen, Cleaners) | $10,465.80 | |
| 3 Supplies (Lamps, Cleaning Supplies, etc.) | 246.05 | |
| 4 Maintenance & Repairs | 2,009.40 | |
| 5 Electricity | 1,242.70 | |
| 6 Heat | 3,348.62 | |
| 7 Insurance (Fire, Liability, Plate Glass, etc.) | 2,958.13 | |
| 8 Taxes—Real Estate | 14,486.85 | |
| 9 Taxes—Payroll | 240.70 | |
| 10 Sewer Rent | 438.42 | |
| 11 Water Rent | 1,042.73 | |
| 12 Interest—$603,500-5½% | 26,830.60 | |
| 13 Commission—Rent Collections | 620.17 | |
| 14 Trash and Ash Removal | 420.00 | |
| 15 Home Office Expense (Supervision, Bookkeeping, etc.) | 7,397.29 | |
| 16 Miscellaneous (Exterminating, Window Cleaning, etc.) | 401.37 | |
| | | 72,148.83 |
| Excess of Receipts Over Disbursements | | $ 3,625.01 |

[6] See paragraph 4 of the stipulation of the parties of February 6, 1948.

be compensated for every ascertainable loss occasioned by Goldman's wrongful action regardless of whether Goldman made any gain or suffered any actual loss. Stated another way, Blum contends that had he been in possession he would have managed the property more economically, and effected savings in several of the items, thus reducing the amount disbursed. Blum contends he is entitled to recover these amounts, with interest.

The two appeals may be disposed of in one opinion. We turn first to Goldman's appeal at No. 9755. Preliminarily we state that Goldman has extensive real estate and theatre holdings; that its primary business is the motion picture business; that in 1946 Goldman owned or operated twelve theatre properties; that of its income in 1946 amounting to more than $2,000,000, only $35,426.24 was derived from rental of properties other than theatres, exclusive of rentals received from the 69th Street Theatre property. It further appears that in 1946 the total overhead expenses of Goldman, exclusive of the salary of its president (William Goldman) but including all other salaries and expenses incurred by Goldman not specially identified with the operation of a particular theatre or other property, amounted to $155,525.67. This sum was then allocated or proportioned among eleven [7] of the separate properties owned or operated by Goldman in such proportion as appeared to the defendant's treasurer to be fair, $7,397.29 being allocated to the 69th Street Theatre property, and subsequently charged as a disbursement in its December 30, 1946 statement. This amount represented about 4.75% of the total overhead and was the lowest percentage of the general home office expense of the twelve properties owned or leased by Goldman during 1946, save one which was not acquired by Goldman until October 1, 1946.[8] The percentages for the other ten properties ranged from 6.7% to 16.32%. It is further stipulated by the parties that "substantial services in connection with renewing leases were performed by Norman Weiss, Vice-President of defendant company, which services resulted in increasing the rent payable by commercial tenants in the amount of $590.00 per month for leases made and executed during defendant's possession of the property and $240.00 per month for leases primarily negotiated during defendant's possession and later consummated and executed by plaintiffs' real estate agents. * * * "

On the basis of the foregoing facts, Goldman contends and Blum denies that Goldman should be permitted to deduct the home office expense item. The court below disallowed this disbursement. After stating that "It seems obvious that the defendant is attempting to charge the plaintiffs with some portion of a general overhead which includes picture buying, institutional advertising, traveling, entertainment, and many other items unconnected with the leasing and operating of apartments and stores, * * * " the court concluded that as there was nothing before it from which it could determine " * * * how much, if any, of this item could be properly allocated * * * " to the 69th Street property, it had no choice but to disallow the entire item. Goldman then moved to reopen the record, submitting with the motion an itemized account of the items he considered properly chargeable to the 69th Street Theatre property.[9] The court below denied the motion holding that in an accounting for profits of wrongdoing where the wrongdoing consists of some activity which is a mere incident of or adjunct to the defendant's main business, no percentage of normal overhead expenses, which would have been incurred anyway, may be included in the accounting. Accordingly judgment for Blum was entered for $8,277.57, representing the home office expense item plus interest. We cannot say that the court below was in error in its decision on this point. The finding of fact is not clearly erroneous for the management of the 69th Street property was incidental to Goldman's main business.

We turn next to Blum's cross ap-

[7] One of the properties was not charged with a proportion of the overhead because Goldman did not operate the theatre but merely leased it.

[8] See par. 15 of the stipulation.

[9] These totaled $7,906.46, $509.17 more than charged in item 15 of the account rendered.

peal at No. 9762. He asserts the court below erred in failing to find in his favor in respect to eight separate items, two of which pertain to the correctness of amounts of disbursements shown on Goldman's accounting, the remaining six dealing solely with amounts of interest on items appearing in the accounting. Preliminary we state that it is agreed by the parties that during Goldman's tenure of the building, he maintained a regular staff of five employees, and in addition one temporary employee for a two months' period. Blum, however, maintains four. It is further agreed that these four employees and a real estate management firm employed at the rate of 3% [10] of the gross rentals, collect the rents and perform the other necessary maintenance functions for a total of $1,033.28 less in salaries and commissions than paid by Goldman for the same duties. The parties also agree that the mortgagee, at the time the negotiations for the sale of the property were being conducted, was willing to reduce the interest rate on the mortgage from 5½% to 4% upon reduction of the principal in the amount of $53,500 or more. It is further agreed that Blum, had he acquired the property instead of Goldman, was in a position to make a reduction of the principal, and, on acquiring the property did in fact pay the mortgagee $103,500 on account of the principal, and the interest rate was thereupon reduced to 4%.

Blum contends (1) Goldman paid $1,033.28 in excessive salaries and expenses, e. g., Goldman employed five persons to manage the property and collect the rents while Blum requires only four; (2) that Goldman paid $14,028.79 excessive interest on the mortgage, the sum being the difference between that which Goldman actually paid, and what Blum would have paid had he been in possession. Blum contends that as the mortgagee had agreed to reduce the interest rate thereon from 5½% to 4% upon payment of $53,500 or more of the principal and since he, Blum, was prepared to make and did make a reduction of $103,-500 in principal amount upon gaining possession of the property, following which time the interest rate was reduced to 4%, he is therefore entitled to the difference; (3) that he is entitled to interest on the amounts claimed in (1) and (2).

Blum asserts also that he is entitled (4) (a) to interest on the balance, $3,625.01 admittedly due under the accounting, from a "median date", July 1, 1946, and (b) interest on the same amount, viz., $3,625.01, from the date Goldman tendered its check on December 30, 1946, to January 27, 1948 (see note 5, supra), when permission to cash the check without prejudice to any future claim was given by Goldman;[11] (5) interest on the sum of $6,391.90 representing accrued interest on the mortgage, a kind of sinking fund accrued by the trustees of the property, which Goldman received from its grantors and held until the next interest payment date; and finally (6) interest on all of the foregoing (except item 4(b) above) from December 30, 1946, until the date of final adjudication. Blum concedes that items (3) to (6) as listed in the foregoing paragraph pertain only to interest on amounts appearing in the accounting and, as we have stated, not to the correctness of the amounts themselves.

Blum further concedes that the only question (exclusive of the items of interest set out immediately above) as to items (1) and (2) as set out above, is whether or not Goldman is entitled to full credit for the amounts paid as salaries and interest paid on the mortgage both of which Blum contends are excessive.

Blum makes no contention that any of the expenditures are tainted with fraud or are unreasonable. His case is pitched solely upon the theory that had he been in possession the sums expended would have been less, and in respect to certain items, that since gaining possession he has effected substantial reductions. He takes the position that he is entitled to that amount, plus interest, which he would have saved had he,

---

[10] 5% is normal charge for rent collections in the Philadelphia area.

[11] These arrangements were made pursuant to the accounting required by the decree of the court below. Goldman was not required by the decree or by any principle of law to assure Blum that if the latter cashed Goldman's check he might do so without prejudice to any future claim that Blum might assert.

not Goldman, been in possession of the property.

The court below refused to allow the amounts claimed by Blum, concluding that under the decree for accounting he was not entitled to maintain his claim for $14,028.79 based on the alleged excess interest paid by Goldman on the mortgage, or to the amount of $1,033.28 claimed by him by way of alleged excessive salaries. As to the amount based on alleged excess interest on the mortgage, the court concluded that the decree for accounting " * * * plainly does not include gains and profits which might have been, but actually were not, derived."[12] As to the amount based on alleged excessive salaries the court stated that it was not " * * * the intent of the decree that the defendant should be surcharged for money actually paid by it in good faith in connection with the operation of the premises on the theory, not that it profited in any way, but that some of the expenses could be saved by a somewhat more economical administration."

We agree. As he was directed to do, pursuant to the decree of the court below ordering an accounting (which this court affirmed) Goldman submitted an accounting for the "surplus of gains, rents, issues and profits *over and above its proper charges connected therewith* * * *."[13] It is clear that under the decree to which he never objected, Blum is entitled to the surplus or profits which the property produced, i. e., the difference between income less reasonable and proper expenditures. Moreover, we are required, under the view taken by the parties, and on the record as made, to consider only the question whether Blum is intitled to the items which he claims as "damages" for Goldman's failure to administer the property as economically and efficiently as he, Blum, might have done. Or as Blum has himself stated it, on page 11 of Appellant's Brief and Appendix in No. 9762, "It is Blum's contention that he should be charged with no more than he himself would have had to pay (and does now pay) to maintain the property." Since the inception of this litigation Blum has apparently chosen not to assert the position that Goldman is precluded from receiving any credit at all for any of his disbursements. Cf. Morrison v. Robinson, 7 Casey 456, 31 Pa. 456; Foster v. Weaver, 118 Pa. 42, 52, 12 A. 313, 4 Am.St.Rep. 573; Wistar's Appeal, 125 Pa. 526, 17 A. 460, 11 Am. St.Rep. 917. Therefore, aside from the numerous claims for various items of interest we are only called upon to decide whether the expenditures for salaries and other expenses and interest paid on the mortgage were proper charges within the meaning of the decree.

Turning first to Blum's claim for excessive salaries, item (1) above, we state that since there is no showing that the expenditures were not made in good faith, nor were unreasonable, we do not think Goldman should be charged for alleged "excessive" salaries and expenses on the speculative and conjectural premise that the property might or would have been more economically managed by Blum. Goldman's management was a reasonable and adequate one, well within the permissive limits of sound business judgment.

We find also that Blum's contention that Goldman is not entitled to credit to interest on the mortgage in the amount paid by him is without merit. While Goldman was in possession of the property he was legally obligated to pay interest on the then-existing principal at $5\frac{1}{2}\%$. He was under no duty, legal or moral, to reduce the mortgage. Until the mortgage was actually reduced, Goldman had no choice but to pay the interest at the prescribed rate. After the final decree of the lower court, had Blum wished to do so, he could have reduced the principal prior to actual conveyance, thus gaining the benefit of a lower interest rate than that which Goldman was

[12] As stated, Blum claimed that he could get the mortgage at a lower interest rate upon making the required reduction in principal amount. The court below treated this as one of the "gains and profits" sought by Blum and so stated as appears from the quotation from the opinion of the court below quoted above. The court deemed the interest actually paid by Goldman on the mortgage to be a proper charge and therefore a credit in Goldman's favor in its accounting with Blum.

[13] Emphasis added.

obligated to pay. Blum would have been fully protected if he had done this for the court below retained jurisdiction in order to give "full effect to [its] decree * * *." Yet Blum would now surcharge Goldman for the difference in interest rates, while retaining the money which subsequently he used to reduce the mortgage. We cannot adopt Blum's position. Goldman's disbursements of interest at the 5½% rate clearly constituted a proper charge. To hold otherwise would not only surcharge Goldman for an expenditure he was legally obligated to make, but would also provide a windfall for Blum. See Morrison v. Robinson, supra. Item (3) above, interest claimed on (1) and (2), of course falls with the failure of the respective principal claims.

■ Four other items remain to be considered. We will discuss them in the order hereinbefore set out. Item No. 4(a) supra, consists of a claim for interest in the sum of $108.75 on the amount of $3,625.01 found to be due on the accounting from Goldman to Blum, the interest calculation being based on a so-called "median" date, viz., July 1, 1946. What Blum has done is to take the amount found to be due from Goldman under the accounting of December 30, 1946, and selecting July 1, 1946, as a "median" or mid-point between January 10, 1946, the day on which the property was conveyed by the trustees to Goldman, and December 30, 1946, the date on which the accounting was rendered, claim interest from July 1, 1946 on that amount. No authority is cited for such a proposition and we know of none. Interest runs on a sum found in an accounting from the date of the order requiring it. We reject Blum's contention.

■ Item 4(b), supra, consists of a claim for interest on the sum of $3,625.01 from the date that the accounting was completed and a check for the sum last mentioned was given by Goldman to January 27, 1948 when Goldman authorized Blum to cash the check tendered therefor without prejudice to any other claims which Blum might have had. The circumstances are as follows. Goldman gave Blum a check in the sum of $3,625.01 due under the accounting but Blum, as indicated in this opinion, asserted many other claims. He demanded that Goldman authorize him to cash the check without prejudicing any rights which he may have had to assert such additional claims. It is obvious that no cause of action can be based on such a state of facts. Insofar as the record shows the check did not purport to be a release or have any legend written upon it which might give it such effect. There is nothing to indicate that Blum would have been prejudiced by cashing the check and receiving the money.

■ Item 5, supra, consists of a claim of $109.22, representing interest on the sum of $6,361.90 given to Goldman by the trustees on the day of the conveyance of the property to Goldman, viz., January 10, 1946. This claim requires such explanation as we can make from the present record. It is as follows. The trustees of the property prior to the time of their conveyance to Goldman had accrued the sum of $6,361.90 representing interest due on the mortgage on the property from October 23, 1945 to January 10, 1946. This amount with an additional appropriate sum was payable on April 23, 1946 to the mortgagee as the semi-annual installment of interest due on the mortgage. The sum of $6,361.90 was turned over by the trustees to Goldman pursuant to their agreement. The claim of $109.22 represents interest on the amount of $6,361.90 from the date (January 10, 1946) on which Goldman received the money from the trustees until the day he paid the interest (April 23, 1946).

In view of the foregoing it is difficult indeed to grasp the point upon which Blum bases his claim. He seems to contend that Goldman had the use of $6,361.90 for 103 days and that this was a gain or profit to Goldman. There is no showing that Goldman invested the sum of $6,361.90 for 103 days or made any use of the money other than to pay the semi-annual installment of interest when it became due. Absent such a showing Blum's claim for interest cannot be sustained. If he had made such a showing other questions would arise which need not be discussed here.

Item 6, supra, represents a claim by Blum for interest from the date of conveyance by Goldman, December 30, 1946, until the date of final adjudication, on any or all of the

foregoing sums (items 1 to 5, supra except item 4(b)) which are found by the court to be due him. As we have disallowed all of Blum's claims, hereinbefore enumerated his claim for interest necessarily fails.

The judgment will be affirmed.